ACCEPTED
14-15-00917-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 4:23:46 PM
CHRISTOPHER PRINE
CLERK

CASE NUMBER 14-15-00917-CV

IN THE FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 4:23:46 PM
CHRISTOPHER A. PRINE
Clerk

## IN RE SHELBY LONGORIA

Original Proceeding
Arising from Cause Number 414270 in
Probate Court Number One, Harris County, Texas

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

James Austin Fisher
   State Bar of Texas Number 07051650
   email: jfisher@fisherwelch.com
Shannon L.K. Welch
   State Bar of Texas Number 90001699
   email: swelch@fisherwelch.com
**FISHER & WELCH**
**A Professional Corporation**
Ross Tower, Suite 2800
500 North Akard Street
Dallas, Texas 75201
Telephone:  214.661.9400
Facsimile:   214.661.9404

**ATTORNEYS FOR REAL PARTY IN INTEREST
JAMES THOMAS DORSEY,
INDEPENDENT EXECUTOR OF THE ESTATE OF
DOROTHY LOUISE LONGORIA, DECEASED**

November 24, 2015

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

ISSUE PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

NOTE REGARDING RELATOR'S STATEMENT OF ISSUE
PRESENTED AND THE SCOPE OF THIS PROCEEDING. . . . . . . . . . . . . . . xiii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Objections to Relator's Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . 1

    The Executor's Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Response to Principal Assertions of Fact by Relator. . . . . . . . . . . . . 4

        Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        Residence of the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        Residence of the Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        Residence of the Decedent and
        Situs of Administration of Her Estate. . . . . . . . . . . . . . . . . . . . . . . 16

        Procedural History of the Litigation.. . . . . . . . . . . . . . . . . . . . . . . . 17

        The Executor's Counterclaims Against Relator.. . . . . . . . . . . . . . . . 22

        Misappropriation of Funds
        Withdrawn from Mexican Accounts. . . . . . . . . . . . . . . . . . . . . . . . . 24

        The Disputed Donation Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARGUMENT
The Trial Court Did Not Abuse Its Discretion by
Declining – Again – To Dismiss the Executor's Counterclaims. . . . . . . . . . . . . 30

I. To Show Himself Entitled To Dismissal, Shelby
Was Required to Bear a "Heavy Burden" To
"Clearly Show" Facts That "Strongly Favor" a
"Specific, Available, and Adequate" Alternative Forum,
While Giving "Substantial Deference" To This Forum. . . . . . . . . . . . . . . 30

II. The Standard for Dismissal Under the Common Law
Is More Stringent Than the Standard Under the *Forum
Non Conveniens* Statute, Which Is Inapplicable Here. . . . . . . . . . . . . . . . 35

III. Shelby's Argument Depends on Affidavit Testimony That
He Did Not Offer in Support of the Motion Re-Urging Dismissal,
and That the Trial Court Was Not Obliged to Believe. . . . . . . . . . . . . . . . 38

    A. The Petition Cites Affidavits and Exhibits That
        Were Not Cited in the Motion Re-Urging Dismissal
        or Offered During the Hearing on That Motion. . . . . . . . . . . . . . . . 38

    B. The Petition Cites Testimony That the
        Trial Court Was Not Required To Believe. . . . . . . . . . . . . . . . . . . . . 40

IV. Shelby Failed To Prove That Any Particular State in Mexico
Is an Adequate and Available Forum for This Case. . . . . . . . . . . . . . . . . . 42

    A. Shelby's Failure To Identify a *Specific*
        Alternative Form Is Fatal to His Petition. . . . . . . . . . . . . . . . . . . . . 42

    B. Shelby Failed To Prove That Mexico City Is
        an Adequate and Available Forum for This Case. . . . . . . . . . . . . . . 43

        1. In the Trial Court, Shelby Offered No Evidence
            That Litigation of the Executor's Counterclaims
            Would Be Convenient or Even Possible in Mexico City. . . . . 43

2.     The Suit in Mexico City Is Completely Different:
It Seeks To Set Aside a Mexican Trust and Seeks
Relief from Mexican Banks That Were Trustees.. . . . . . . . . . 44

3.     The Suit in Mexico City Was 15 Months Old
When Shelby Filed His Motion Re-Urging Dismissal,
and He Did Not Mention That Suit in the Motion. . . . . . . . . 46

C.    Shelby Failed To Prove That Tamaulipas Is
an Adequate and Available Forum for This Case. . . . . . . . . . . . . . . 47

1.     The Courts of Tamaulipas Would Not Have
Jurisdiction over the Executor's Claims
Against Shelby or the Third-Party Claims. . . . . . . . . . . . . . . 48

2.     Tamaulipas Is Not an Adequate Alternative
Forum Because It Provides No Remedy for the
Executor's Causes of Action Against Shelby. . . . . . . . . . . . . 51

3.     Tamaulipas Is Not an Available Alternative Forum
Because the Executor's Claims Against Shelby Would
Be Barred by an Unwaivable Statute of Repose There. . . . . . 51

V.    Shelby Failed To Prove That the Private-Interest
Factors and Public-Interest Factors Favor Litigation
of the Executor's Claims in Any Other Forum. . . . . . . . . . . . . . . . . . . . 52

A.    All of the Private-Interest Factors
Point to This Forum or Are Neutral. . . . . . . . . . . . . . . . . . . . . . 54

1.     Access to Relevant Evidence
Is Far Better in This Forum. . . . . . . . . . . . . . . . . . . . . . . . . 54

2.     Compulsory Process for Attendance of Unwilling
Witnesses Is Available in This Forum, But Not in
Mexico, and the Cost of Obtaining Attendance
of Willing Witnesses Is Less Here. . . . . . . . . . . . . . . . . . . . 60

3.      No View of Any Premises Will Be Needed. . . . . . . . . . . . . . . 61

4.      A Judgment of The Trial Court Would Be
        Fully Enforceable as to All Parties, But a
        Judgment of a Mexican Court Would Not. . . . . . . . . . . . . . . 61

5.      The Practical Problems and Expense of
        Proceeding in Mexico Are Far Greater. . . . . . . . . . . . . . . . . 62

B.      All of the Public-Interest Factors Point to This Forum. . . . . . . . . . 63

1.      The Dispute Originated Here and
        There Are No Greater Administrative
        Difficulties Here Than in Mexico. . . . . . . . . . . . . . . . . . . . . 63

2.      This Community Has the Strongest
        Relationship to the Litigation, So the
        Burden of Jury Duty Belongs Here. . . . . . . . . . . . . . . . . . . . 64

3.      The Dispute Arose in Texas, Between Texans,
        So This Forum Has the Stronger Interest
        in Deciding the Controversy. . . . . . . . . . . . . . . . . . . . . . . . 65

4.      Maintaining the Litigation Here
        Avoids an Issue of Conflicts of Law. . . . . . . . . . . . . . . . . . . 67

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

SIGNATURE OF ATTORNEY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

CERTIFICATE UNDER TEX. R. APP. P. 9.4(i). . . . . . . . . . . . . . . . . . . . . . . . . 71

CERTIFICATE UNDER TEX. R. APP. P. 52.3(j) AND 52.4. . . . . . . . . . . . . . . 71

CERTIFICATE OF SERVICE UNDER TEX. R. APP. P. 9.5(e). . . . . . . . . . . . . 72

# INDEX OF AUTHORITIES

*Adams v. Merck & Company Inc.*,
  353 Fed. App'x 960 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Alpine View Company Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*American Dredging Company v. Miller*,
  510 U.S. 443 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bank of Credit and Commerce International (OVERSEAS) Ltd. v.*
*State Bank of Pakistan*,
  273 F.3d 241 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Benz Group v. Barreto*,
  404 S.W.3d 92 (Tex. App. – Houston [1st Dist.] 2013, no pet.). . . . . . . . 31 n.120

*Boston Telecommunications Group Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 34, 50, 63

*Brady v. Fourteenth Court of Appeals*,
  795 S.W.2d 712 (Tex.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

*DiFederico v. Marriot International, Inc.*,
  714 F.3d 796 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 42

*Dole Food Company, Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Duha v. Agrium, Inc.*,
  448 F.3d 867 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Fasules v. DDB Needham Worldwide, Inc.*,
   No. 89 C 1078, 1989 WL 55373 (N.D. Ill. 1987). . . . . . . . . . . . . . . . . . . . . . . . 57

*Founding Church of Scientology of Washington, D.C. v. Verlag*,
   536 F.2d 429 (D.C. Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Guidi v. Inter-Continental Hotels Corp.*,
   224 F.3d 142 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35, 53, 57

*Howeth Investments, Inc. v. City of Hedwig Village*,
   259 S.W.3d 877 (Tex. App. – Houston [1st Dist.] 2008). . . . . . . . . . . . . . . . . . 40

*In re Angelini*,
   186 S.W.3d 558 (Tex. 2006, orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . 41

*In re Bridgestone Americas Tire Operations LLC*,
   459 S.W.3d 565 (Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36 n.121

*In re BPZ Resources, Inc.*,
   359 S.W.3d 866 (Tex. App. – Houston [14th Dist.] 2012). . . . . . . . . . . . 36 n.121

*In re ENSCO Offshore International Company*,
   311 S.W.3d 921 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36 n.121, 37

*In re Longoria*,
   No. 14-15-00261-CV, 2015 WL 4380762
   (Tex. App. – Houston [14th Dist.] July 16, 2015, orig. proceeding). . . . . . . . . . 59

*In re Old Republic National Title Insurance Co.*,
   No. 14–10–01219–CV, 2011 WL 345676
   (Tex. App. – Houston [14th Dist.] Feb. 1, 2011, orig. proceeding). . . . . . . . . . 35

*In re Pirelli Tire, L.L.C.*,
   247 S.W.3d 670 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36 n.121

*In re SXP Analytics, LLC*,
  No. 14-11-01039-CV, 2012 WL 1357696
  (Tex. App. – Houston [14th Dist.] Apr. 13, 2012,
  orig. proceeding).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36 & n.122

*Jiali Tang v. Synutra International, Inc.*,
  656 F.3d 242 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 42

*Koster v. (American) Lumbermens Mutual Casualty Company*,
  330 U.S. 518 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 37 n.123, 52

*Lee v. Palacios*,
  No. 14-06-00428-CV, 2007 WL 2990277
  (Tex. App. – Houston [14th Dist.] Oct. 11, 2007, pet. denied). . . . . . . . . . . . 3, 39

*Liberty Mutual Insurance Company v.*
*Transit Mix Concrete and Materials Company*,
  No. 06-12-00117-CV, 2013 WL 3329026
  (Tex. App. – Texarkana June 28, 2013, pet. denied). . . . . . . . . . . . . . . . . . . 36

*Manu International, S.A. v. Avon Products, Inc.*,
  641 F.2d 62 (2d Cir.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*Moon Sun Kang v. Derrick*,
  No. 14-13-0086-CV, 2014 WL 2048424
  (Tex. App. – Houston [14th Dist.] May 15, 2014, pet. denied).. . . . . . . . . . . . 3, 39

*Mowrey v. Johnson & Johnson*,
  524 F.Supp. 771 (W.D. Pa. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Omni Hotels Management Corp. v. Round Hill Developments Ltd.*,
  675 F.Supp. 745 (D.N.H. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Piper Aircraft Company v. Reyno*,
  454 U.S. 235 (1981). . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 49, 50, 53, 60

*Quixtar, Inc. v. Signature Management Team LLC*,
  315 S.W.3d 28 (Tex. 2010). . . . . . . . . . . . . . . . . .  31 & n.120, 32, 35, 52, 53, 60

*Reid-Walen v. Hansen*,
  933 F.2d 1390 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Schexnider v. McDermott International, Inc.*,
  817 F.2d 1159 (5th Cir.),
  *reh'g denied,* 824 F.2d 972 (5th Cir.),
  *cert. denied*, 484 U.S. 977 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*SES Products, Inc. v. Aroma Classique, LLC*,
  No. 01-12-00219-CV, 2013 WL 2456797
  (Tex. App. – Houston [1st Dist.] June 6, 2013). . . . . . . . . . . . . . . . . . . . 35, 54, 68

*Sinochem International Company Ltd. v.*
*Malaysia International Shipping Corp.*,
  549 U.S. 422 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 35

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
  382 F.3d 1097 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Texas Custom Pools, Inc. v. Clayton*,
  293 S.W.3d 299 (Tex. App. – El Paso 2009, orig. proceeding). . . . . . . . . . . . . 41

*Vicknair v. Phelps Dodge Industries. Inc.*,
  767 N.W.2d 171 (N.D. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

**Statutes**

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051 (West 2005). . . . . . . . . . . . . . . . . 35

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e) (West 2005). . . . . . . . . . . . . . 37

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(i) (West 2005). . . . . . . . . . . . . . 35

TEX. PROB. CODE ANN. § 4A (West 2013 Supp.). . . . . . . . . . . . . . . . . . . . . . . . 65

TEX. PROB. CODE ANN. § 4B (West 2013 Supp.). . . . . . . . . . . . . . . . . . . . . . . . 65

TEX. PROB. CODE ANN. § 4F (West 2013 Supp.). . . . . . . . . . . . . . . . . . . . . . . . 65

TEX. PROB. CODE ANN. § 5B (West 2013 Supp.). . . . . . . . . . . . . . . . . . . . . . . . 65

**Rules**

TEX. R. APP. P. 9.4(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

TEX. R. APP. P. 9.5(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

TEX. R. APP. P. 52.3(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

TEX. R. APP. 52.4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

TEX. R. CIV. P. 176. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

TEX. R. CIV. P. 205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

## STATEMENT OF THE CASE

Relator's Statement of the Case omits two key facts, and misstates two others.

The omitted facts are these: After Relator's first motion to dismiss for *forum non conveniens* was denied, and after Relator's first petition to this Court for writ of mandamus was denied, Relator filed in the Supreme Court of Texas, on March 27, 2014, a petition for writ of mandamus, again seeking to overturn the denial of his first motion to dismiss – the very motion he is now "reurging."[1] The Supreme Court denied that petition on June 27, 2014 – two months *after* the Real Party in Interest filed in Mexico City the lawsuit which has become the centerpiece of Relator's new argument for dismissal.[2] *In re Shelby Longoria*, No. 14-0205 (Tex. June 27, 2014).

The first misstated fact is this: Relator asserts, without citation to the record, that "The Estate abandoned its community property claim in Texas."[3] This is untrue.

The second misstated fact is this: Relator asserts that, "[o]n February 11, 2015, the Estate amended its counterclaim and for the first time alleged that Shelby was liable for the transfer of pesos by Mexican companies through Dorothy's

---

[1] Supplemental Record (filed Nov. 24, 2015) ("Supp. R.") at 0026-66.

[2] Supp. R. 0067-70; R. 02480-02551.

[3] Petition at viii.

Mexican bank accounts."[4] While it is true that amended *counterclaims* (not one, but several) were filed on that date, and they include a counterclaim related to funds that had been withdrawn from bank accounts in Mexico, it is *not* true that the Real Party in Interest (the "Executor"), who is Independent Executor of the Estate of Dorothy Louise Longoria ("Dorothy"), claimed "Shelby was liable for the transfer of pesos by Mexican companies through Dorothy's Mexican bank accounts." Rather, the Executor pleaded that Relator, a resident of Texas, breached his fiduciary duty to Dorothy, another resident of Texas, by misdirecting her funds to himself and others *after* they were withdrawn from her bank accounts in Mexico. And the misdirected funds were not only pesos; over $11,800,000 U.S. dollars were taken from one of the accounts.[5]

---

[4] Petition at viii.

[5] R. 01710-35.

# ISSUE PRESENTED

Was it an abuse of discretion for a statutory probate court in Harris County, Texas, to deny a motion "reurging" a previously filed, and denied, motion to dismiss claims under the doctrine of *forum non conveniens*, based on the disputed contention that an unidentified state in the nation of Mexico would be a more convenient venue for litigation of those claims, where:

> the claims involve four parties, none of whom resides anywhere in Mexico, all of whom reside in Texas, and three of whom reside in Harris County, Texas;

> the claims were pleaded by the duly appointed executor of an estate pending in the same probate court;

> the claims were pleaded by the executor as *counterclaims* in a will contest pending in the same probate court and presenting common issues of fact;

> the claims seek relief *only* from a party who has lived in Texas for 36 years and who brought the will contest in which the counterclaims were pleaded;

> the claims are based on the rights, under Texas law, of a decedent who lived in Texas for the last 25 years of her life, lived in Harris County for the last seven years of her life, and died there, resulting in her estate being administered there;

> the claims are expressly based on causes of action for breaches of fiduciary duties that are recognized in Texas law but unrecognized in Mexican law;

> the movant, as counter-defendant, pleaded third-party claims against two individuals who reside in Harris County, Texas, and who are not subject to the jurisdiction of the courts in Mexico;

a petition to this Court of Appeals for writ of mandamus, seeking to overturn the denial of the first motion to dismiss, was denied by this Court;

a petition to the Supreme Court of Texas for writ of mandamus, again seeking to overturn the denial of the first motion to dismiss, was likewise denied by the Supreme Court; and

the party "reurging" the previously denied motion to dismiss failed to offer any new evidence, either in the motion itself or during the hearing on the motion?

**NOTE REGARDING RELATOR'S STATEMENT OF ISSUE PRESENTED AND THE SCOPE OF THIS PROCEEDING**

Relator states that a single issue is presented by his petition, and that it is limited to only one claim: "the Executor's new claim that Shelby is liable for deposits into and withdrawals out of Dorothy's Mexican bank accounts."[6] This limitation, however, is inconsistent with Relator's prayer for relief, in which Relator requests that the Court "grant the writ of mandamus and compel the dismissal of the *counterclaims* asserted by the Executor."[7] Despite this inconsistency within the Petition, we will respond to the Petition as if it seeks dismissal of *all* of the counterclaims pleaded by the Real Party in Interest – even though this Court and the Supreme Court of Texas have already addressed most of the counterclaims and held that dismissal of them is not required.

---

[6] Petition at x.

[7] Petition at 31.

**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

TO THE HONORABLE COURT OF APPEALS:

Real Party in Interest James Thomas Dorsey in his capacity as Independent Executor of the Estate of Dorothy Louise Longoria, Deceased (the "Executor") respectfully submits this response to the Petition for Writ of Mandamus (the "Petition") filed herein by Shelby Longoria ("Relator" or "Shelby") against Respondent, the Honorable Loyd Wright, Presiding Judge of Probate Court Number One of Harris County, Texas (the "Trial Court").

**STATEMENT OF FACTS**

**Objections to Relator's Statement of Facts**

In his Statement of Facts, Shelby cites and quotes extensively from testimony and exhibits that were not presented by him to the Trial Court in support of the motion that he now asks this Court to order the Trial Court to grant: Shelby Longoria's Motion Reurging Dismissal on Forum Non Conveniens Grounds (the "Motion Re-Urging Dismissal").[8] Not only did Shelby fail to offer such materials

---

[8] Petition at 1 n. 11 (cites to R. 01883, 01884), n. 13 (cite to R. 01177); 2 n. 14 (cites to R. 01178, 01242-43), n. 17 (cite to R. 01187-88); 3 n.19 (cite to R. 02311), n. 20 (cite to R. 02311); 4 n. 21 (cites to R. 02308-10, 02311), n. 22 (cites to R. 01770, 01771), n. 23 (cites to R. 01770, 01771), n. 24 (cites to R. 01771, 2400, 2416); 5 n. 25 (cite to R. 02426), n. 26 (cite to R. 01771); 6 n. 30 (cite to R. 01771-72), n. 32 (cites to R. 02312, 02401, 02416-17, 02439, 02427-28, 02436-39, 02442-43); 7 n.33 (cites to R. 01772, 02457), n. 34 (cites to R. 02430, 02431), n. 36 (cite

1

into evidence during the hearing on the Motion Re-Urging Dismissal, he failed even to cite them in, or attach them to, that motion or to his reply brief in support thereof.[9]

Relator's Statement of Facts includes at least 40 citations to such extraneous materials, which generally were affidavits and exhibits attached to other motions filed by Shelby at various times during the course of the proceedings below.[10]

Nothing in the Texas Rules of Civil Procedure or any other rule or statute of this state suggests that proceedings on motions to dismiss for *forum non conveniens* are to be treated like summary-judgment proceedings, in which affidavits are generally admissible and to be considered whether or not they are offered into evidence and admitted by the trial court.

But even if one assumes for the sake of argument that, just as in summary-judgment proceedings, Shelby was entitled to rely on affidavit testimony, which was neither offered by him nor admitted by the Trial Court, to carry his burden to prove

---

to R. 02456), n. 37 (cite to R. 02312), n. 38 (cite to R. 02321);  8 n. 39 (cites to R. 01601-10, 02307, 02308), n. 40 (cite to R. 01607-10).

[9] R. 01798-01808; 02464-02577; 02589-02616.

[10] *See* note 8 *supra* at 1.  Shelby's citations to R. 01883-84, *see* Petition at 1 n. 11, are citations to his own affidavit, that we attached to the Executor's response to one of Shelby's other motions, but we stated therein that we offered it only to prove the admissions by Shelby in paragraph 23 thereof.  R. 01852 (¶ 7); 01883-88.  Shelby did not cite or offer it in support of the Motion Re-Urging Dismissal.

2

facts requiring dismissal, the Trial Court still would not be required to search the record for affidavits or other evidence that might support Shelby's position. Shelby was obligated to cite, expressly and specifically, whatever evidence he relied upon to support his Motion Re-Urging Dismissal. *See Moon Sun Kang v. Derrick*, No. 14-13-0086-CV, 2014 WL 2048424, at *7 (Tex. App. – Houston [14th Dist.] May 15, 2014, pet. denied) ("[t]he trial court is not required to search the record for evidence raising a material fact issue without more specific guidance from the nonmovant"); *Lee v. Palacios*, No. 14-06-00428-CV, 2007 WL 2990277, at *7 (Tex. App. – Houston [14th Dist.] Oct. 11, 2007, pet. denied) (same).

Of course, in considering a *forum non conveniens* motion, a trial court may choose to consider parts of a record that the movant fails to cite in support of the motion; but it cannot be an abuse of discretion for a trial court to disregard parts of the record that no party brings to its attention. Accordingly, this Court should disregard the evidence[11] that Shelby never asked the Trial Court to consider on the issue *sub judice*.

---

[11] *See* note 8 *supra* at 1.

3

**The Executor's Statement of Facts**

**Response to the Principal Assertions of Fact by Relator.** We begin unconventionally, by going directly to the factual issues at the crux of this mandamus proceeding. To solve the obvious problem that he is seeking relief that has already been denied by this Court *and the Supreme Court of Texas*, Shelby's Statement of Facts spins a tale that he summaries as follows:

> The case now presented to this Court is an entirely new matter. The Estate is pursuing its community-property claim in Mexico and has abandoned that claim in Harris County probate court. The estate wants to go to trial solely on its claim that Shelby is liable for withdrawals from Dorothy's bank accounts.[12]

Shelby is wrong on all counts. We examine each part of his story in turn.

(1)     Shelby first says: the Executor initially sued Shelby based on a single claim – what he calls "the community-property claim" – founded on the community-property rights of the decedent, Dorothy Louise Longoria ("Dorothy"), in shares of stock that had been conveyed into a trust known as the "Afirme Trust."[13]

The truth: From the inception of this litigation, the Executor has pleaded several claims against Shelby – not only one claim, and not only claims related to the

---

[12] Petition at 16.

[13] Petition at 2 (formation of Afirme Trust), 8-9 (description of supposed claim against the Afirme Trust).

Afirme Trust, and not only claims based on her community-property rights.[14] Throughout the proceedings below, the Executor has averred that Shelby breached his fiduciary duty to Dorothy by mismanaging her "property and accounts" – both community property *and separate property* – for his own benefit, and by concealing from her that he had done so. The Executor averred that Dorothy's husband, Eduardo Longoria Theriot ("Eduardo"), died on January 26, 2005, and Dorothy died on April 6, 2012, so by virtue of those facts alone it was made clear that for the last seven years of her life, Dorothy's *separate* property was managed by Shelby.[15] And, from the start of the case, the counterclaims against Shelby expressly related to his mismanagement of "property and accounts" without that averment ever being limited to accounts in Texas.[16]

It is certainly true that, among his other counterclaims against Shelby, the Executor has sought to recover damages based in part on Dorothy's community-property rights in shares of stock in Mexican companies, stock that purportedly had been conveyed by Eduardo to a Mexican bank as trustee of the Afirme Trust, as well

---

[14] R. 00036-48, 00724-42, 01471-94, 01525-52.

[15] R. 00729-30 (¶¶ 20-26).

[16] R. 00727 (¶ 15).

5

as her rights to the "income from" such stock.[17]  The Executor averred that, with respect to *all* of the property that Shelby received from his father – which includes Shelby's beneficial interest in the Afirme Trust – Shelby had promised Dorothy, in writing, that he would "hold them as if they were [hers]" and he would "make the fruits available to [her] for [her] direction as to their use."[18]  But that is just one aspect of the Executor's case.

(2)      Shelby says:  Based on Dorothy's alleged community-property rights, the Executor "sought to undo" a Mexican trust known as the "Afirme Trust" as well as a Mexican will signed by Dorothy's husband, Eduardo Longoria Theriot ("Eduardo").[19]

The truth:  The Executor has never asked the Trial Court to enter a decree setting aside the Afirme Trust; the Executor never asked the Trial Court to enter a decree setting aside a will executed by Eduardo; the Executor never asked the Trial Court to "undo" any act of any judge or other official of Mexican government. In this litigation the Executor has always, and only, sought relief from and against Shelby, individually, a longtime resident of Texas.

---

[17] R. 00717, 00720.

[18] R. 00727-28 (¶ 16).

[19] Petition at 9.

(3)    Shelby says: "After this Court denied the mandamus petition on March 4, 2014, the Estate on May 23, 2014 filed a lawsuit in Mexico seeking the exact relief the Executor had told the probate court and this court [*sic*] that it could not obtain in Mexico – payment to the Estate of half of Dorothy's purported 'community property.'"[20]

The truth:  by omitting a crucial fact that he had an affirmative duty to disclose to this Court, Shelby's assertion is terribly misleading.  The omitted fact is that on March 20, 2014 – between March 4 and May 23, 2014 – Shelby filed in the Supreme Court of Texas another petition for writ of mandamus.[21]  That petition had been pending for over two months when the Executor filed suit in Mexico City.  The Executor, of course, had no idea when the Supreme Court would rule, so Shelby's insinuation that the Executor waited until the *forum non conveniens* proceedings were over before launching his litigation in Mexico is utterly false.

Shelby's assertion is false for another, more fundamental reason.  The action filed by the Executor in Mexico City is completely different from the counterclaims pleaded by the Executor here.  In Mexico City, the Executor sued the parties to the trust agreement creating the Afirme Trust, and the beneficiaries of that trust, to have

---

[20] Petition at 11.

[21] Supp. R. 0026-66.

7

the trust agreement declared invalid and to have Dorothy's shares – or their commercial value – restored to her.[22] Shelby is named as a party because he is a beneficiary of the Afirme Trust. The action in Mexico City neither disproves, nor is inconsistent with, the Executor's representations to the Trial Court and this Court, as quoted by Shelby,[23] relating to "the Executor's counterclaims" in the probate proceeding in Houston. That is, the statements made to the Trial Court and this Court related to the causes of action that the Executor pleaded against Shelby under Texas law. Based on the testimony of a well-qualified expert, the Executor stated that those causes of action are not recognized anywhere in Mexico, and that the relief sought by the Executor – a judgment against Shelby for damages or a constructive trust on property acquired by him by his breaches of fiduciary duty – could not be obtained in Mexico.

It is noteworthy that, after the Executor filed suit in Mexico City, Shelby did not bring it to the attention of the Supreme Court, despite the fact that Shelby's mandamus petition was under consideration there. Nor did Shelby advise the Trial Court of the litigation in Mexico City. And when Shelby filed his Motion Re-Urging Dismissal on August 27, 2015 – 15 months after the Executor filed suit in Mexico

_____

[22] R. 02521-23.

[23] Petition at 11.

8

City – *Shelby did not even mention it to the Trial Court*.[24]  Not until he filed his *reply brief* on September 16, 2015, the day before the hearing on his Motion Re-Urging Dismissal, did Shelby first mention the case in Mexico City.[25]  Yet in this Court it has become the centerpiece of his argument.

(4)    Shelby says:  "After asserting the community-property claim in Mexico, the Estate abandoned it in Harris County."[26]

The truth: the Executor has not abandoned any of his counterclaims based on the community-property rights of Dorothy.  The proposition that the Executor "abandoned" his "community-property claim" is evidently the linchpin of Shelby's argument, for it appears *five times* in his Petition – including the first sentence on page one.[27]  Four of Shelby's five representations that the Executor "abandoned" his so-called "community-property claim" are unsupported by any citation to the record, but in one instance, Shelby cites "amended disclosure responses served on June 8, 2015."[28]  Shelby apparently contends that these amended

---

[24] R. 01798-1808.

[25] R. 2466.

[26] Petition at 13.

[27] Petition viii, 1, 13, 14, 16.

[28] Petition at 13.

disclosures constitute an abandonment of the Executor's claims because, says Shelby, "[t]he Executor did not calculate any damages for the Estate's now-abandoned community property claim."[29]  But this assertion is indisputably false.

In the section on the "amount and method of calculating economic damages," the amended disclosures contain the following paragraph:

> The Executor also seeks $25,000,000, which is an estimate based on information that the businesses that Shelby managed, or was supposed to manage, for the benefit of Dorothy made profits of approximately $10,000,000 per year.  Assuming (but without admitting) that it was reasonable for the businesses to retain one-half of that amount, then Shelby should have distributed to Dorothy as the beneficiary of the fiduciary relationship, at least one-half of the remaining amount, or $2,500,000 per year. Over a period of ten years, the total amount that should have been distributed is $25,000,000.  The Executor is also requesting an award of prejudgment interest on all amounts that should have been distributed to Dorothy.[30]

This disclosure – apparently missed by Shelby's counsel – matches perfectly the Executor's first formal disclosure of his claim against Shelby.  In the Estate's Inventory, Appraisement, and List of Claims filed in the Trial Court on August 27, 2013,[31] the Executor listed a "Claim against Shelby Longoria for breach of fiduciary

---

[29] Petition at 14.

[30] R. 1669

[31] R. 00716-00723.

10

duty" and stated that the amount of the claim was $25,000,000.[32] Shelby himself cites this document as disclosing the Executor's original counterclaim based on Dorothy's community-property rights.[33] And it was filed before the hearing on Shelby's first motion to dismiss for *forum non conveniens.*

(5)    Shelby says: "In its place, the Estate alleged an entirely new theory involving Dorothy's Mexican bank accounts."[34]

The truth: in the original pleading of the Executor's counterclaims, he averred that "Shelby managed property *and accounts* owned by Dorothy and represented to her that he was doing so for her benefit."[35] This averment was not limited to accounts in Texas. Although those averments were later made more specific,[36] and detailed calculations of damages were later provided in amended disclosures,[37] the theories of liability and the ultimate facts underlying the counterclaims have not changed. This is not an "entirely new matter."

---

[32] R. 00720.

[33] Petition at 9.

[34] *Id.* at 13.

[35] R. 00038 (¶ 15).

[36] R. 01474-75, 01481.

[37] R. 01668-69, 01692-1744.

11

Thus, from the outset of this case, the Executor has pleaded multiple causes of action, and *all* of them (except the action for a declaratory judgment that the so-called "Donation Contract," which was not produced by Shelby until January of this year, is unenforceable) were being asserted by the Executor when the Trial Court denied Shelby's First Motion To Dismiss, and when a panel of this Court unanimously denied Shelby's first petition for writ of mandamus, and when the Supreme Court of Texas unanimously denied Shelby's next petition for writ of mandamus. And all of those causes of action are *still* being asserted by the Executor. Consequently, in order to grant the Petition, this Court would have to overturn those earlier decisions – including that of the Supreme Court of Texas – with respect to counterclaims that have been pleaded from the beginning.

Having addressed the most important assertions of fact by Shelby, we now present an overview of the facts relevant to the *forum non conveniens* analysis.

**Nature of the Case.** This original proceeding arises from a will contest that was filed *by Shelby* on June 18, 2013, in the Trial Court, a statutory probate court.[38] Shelby is contesting the validity of a will signed by his mother, Dorothy, on January 21, 2010, over two years before she died on April 6, 2012.[39] Dorothy's estate is

[38] R. 00020-32.

[39] R. 00027.

12

pending in the Trial Court because she was a resident of Harris County at the time of her death, she died in Harris County, and her will was admitted to probate in Harris County.[40]

Real Party in Interest James Thomas Dorsey (the "Executor") is the duly appointed Independent Executor of Dorothy's estate.[41]

**Residence of the Parties.** Shelby – the party insisting that, for the sake of convenience, the Executor's counterclaims against him must be brought somewhere in Mexico – does not live anywhere in Mexico. He lives in McAllen, Texas, and has lived there for 36 years.[42]

The Executor, who is asserting the counterclaims which Shelby seeks to have dismissed, lives in Harris County, Texas.[43]

Sylvia, whom Shelby named as a Third-Party Defendant with respect to the Executor's counterclaims, lives in Harris County, Texas.[44]

---

[40] Supp. R. 0001-3, 0004-5.

[41] Supp. R. 0005.

[42] R. 00020, 02177.

[43] R. 00021.

[44] R. 00021.

Adriana, whom Shelby named as a Third-Party Defendant with respect the Executor's counterclaims, lives in Harris County, Texas.[45]

Thus, every party to the litigation which Shelby insists must take place in Mexico lives in Texas, and three of the four parties live in Harris County, Texas.

**Residence of the Witnesses.** In Shelby's response to a formal request for disclosure, which was in effect at the time of the hearing on his First Motion To Dismiss, Shelby did not identify a single potential witness who lives anywhere in Mexico.[46] Nor did he name one in his testimony during the hearing on his First Motion To Dismiss.[47] He did, however, identify in his disclosures twelve potential witnesses who live in Texas.[48]

Those identified by Shelby as potential witnesses include his brother Eduardo Longoria, Jr., also known as Wayo Longoria ("Wayo"), who is another of Dorothy's children. Wayo lives in Austin, Texas, and has lived there for about 35 years.[49] He is an important witness because, in 1983, Wayo and Shelby – both of whom were

---

[45] R. 00021.

[46] R. 02175-76, 2253-59 (Ex. D-3).

[47] R. 00896-920.

[48] R. 02255-56 (Ex. D-3).

[49] R. 00923.

14

residing in Texas – sent to Dorothy a letter in which they promised to hold certain assets "as they were [Dorothy's]" and promised to "make the fruits available to [Dorothy] for [her] direction as to their use."[50] In his counterclaims, the Executor avers that this letter evidences a fiduciary relationship between Shelby and Dorothy, and that Shelby breached his fiduciary duty to his mother.[51]

Another example of a fact demonstrating Wayo's importance as a witness, is a transaction between him and Shelby in 2007. Following negotiations in the United States, with the assistance of American counsel, they agreed to redemption of shares of stock in two Mexican holding companies in which, the Executor claims, Dorothy owned community property rights. Wayo and Shelby agreed that, to redeem a forty-percent interest in the shares, one of the companies would pay $24,000,000 (in currency of the United States) into a trust for Wayo's benefit.[52]

The Executor identified many other potential witnesses who live in Texas.[53] They include Shelby's wife, Tita, who lives with Shelby in McAllen, Texas.

---

[50] Supp. R. 00087-88.

[51] R. 00727, 01529.

[52] R. 02263-81 (Ex. D-6).

[53] R. 00756-57.

In his latest Petition to this Court, Shelby asserts that six potential witnesses who are "Spanish-speaking Mexican residents" might be called to testify.[54] But Shelby cites, and the record contains, no evidence of where any of them live. The record discloses that two of them appeared for depositions in Texas, and one of them met with Dorothy in Texas.[55]

**Residence of the Decedent and Situs of Administration of Her Estate.** Dorothy lived in Texas for the last 25 years of her life. She and her husband, Eduardo, were married in Laredo, Texas, initially lived in McAllen, Texas, later moved to Nuevo Laredo, Tamaulipas, Mexico, and finally settled in Laredo, Texas, in 1987.[56] When Eduardo died in 2005, Dorothy moved to Houston, where she lived until her death in 2012.[57]

Dorothy's will was admitted to probate by the Trial Court in Houston, Texas, and her estate is being administered there.[58]

---

[54] Petition at 25.

[55] R. 2554, 2561, 2562.

[56] R. 00915, 02260-61 (Ex. D-4).

[57] R. 00917-19.

[58] Supp. R. 0004-5.

16

**Procedural History of the Litigation.** On July 18, 2013, the Executor pleaded a set of counterclaims against Shelby, the gravamen of which is that Shelby had breached, in a variety of ways, fiduciary duties owed by him to Dorothy in his management of her property and accounts over which he had control – both her community property during her marriage to Eduardo and her separate property.[59]

On August 7, 2013, Shelby filed in the Trial Court a motion to dismiss the Executor's counterclaims based on the doctrine of *forum non conveniens* (the "First Motion To Dismiss"), accompanied by an extensive brief.[60]

On August 30, 2013, before the First Motion To Dismiss was heard, Shelby, as Counter-Defendant, pleaded third-party claims against his sisters, Adriana Longoria ("Adriana") and Sylvia Dorsey ("Sylvia").[61] On the same day, Shelby amended his will contest, and thereafter, on September 26, 2013, the Executor amended his counterclaims against Shelby.[62]

---

[59] R. 00036-48.

[60] R. 00049-715.

[61] Supp. R. 0021-25.

[62] Supp. R. 0006-20; R. 00724-42.

17

An evidentiary hearing on the First Motion To Dismiss was convened on October 3, 2013.[63] On October 10, 2013, the Trial Court issued an order denying the motion in its entirety.[64]

On November 12, 2013, Shelby commenced an original proceeding in this Court and urged this Court to issue a writ of mandamus, commanding the Trial Court to dismiss the Executor's counterclaims against Shelby for *forum non conveniens* – precisely the same relief that he now seeks again.[65] This Court denied Shelby's petition, with a *per curiam* opinion, on March 4, 2014.[66]

On March 20, 2014, Shelby filed in the Supreme Court of Texas a petition for writ of mandamus, again seeking a writ compelling the Trial Court to dismiss the Executor's counterclaims based on *forum non conveniens*.[67] On June 27, 2014, the Supreme Court of Texas issued a *per curiam* opinion denying Shelby's petition.[68] *In re Shelby Longoria*, No. 14-0205 (Tex. June 27, 2014).

---

[63] R. 00854-996.

[64] R. 00997-98.

[65] R. 00999-1050.

[66] R. 01151-52.

[67] Supp. R. 0026-66.

[68] Supp. R. 0067-70.

Fourteen months later, on August 27, 2015, Shelby filed in the Trial Court his Motion Re-Urging Dismissal, asking the Trial Court to "dismiss all counterclaims raised by the Estate on forum non conveniens grounds."[69] The Motion Re-Urging Dismissal is the motion that Shelby is now asking this Court to order the Trial Court to grant, yet it bears little resemblance to the Petition now before this Court. In the Motion Re-Urging Dismissal, for example, Shelby *never mentioned the litigation in Mexico City*, even though it had been pending for fifteen months. Moreover, Shelby did not assert that the Executor had abandoned any claim, yet that assertion appears *five times* in his Petition to this Court.[70] And in the Trial Court, Shelby recognized that the Executor was asserting multiple claims for damages, not just one, and he asked the Trial Court to dismiss them all.[71]

Significantly, no evidence was attached to the Motion Re-Urging Dismissal. Shelby merely incorporated into that motion "his previous motion in favor of forum non conveniens dismissal; all supporting exhibits and affidavits; and related hearing transcripts/testimony."[72] Thus, the Motion Re-Urging Dismissal relied on the same

---

[69] R. 01798-1808, 1807.

[70] R. viii, 1, 13, 14, 16.

[71] R. 01800-01, 01807.

[72] R. 01798 n.1.

19

evidence that the Trial Court, this Court, and the Supreme Court of Texas had already held to be insufficient to require dismissal under the law of *forum non conveniens*.

On the same day when Shelby filed the Motion Re-Urging Dismissal, he filed two other motions: (1) Shelby Longoria's Motion to Dismiss the Estate's Counterclaims Relating to Dorothy Longoria's Banamex Accounts;[73] and (2) Shelby Longoria's Motion to Dismiss the Estate's Counterclaims Arising Out of the Donation Contract.[74] Each of those motions had evidence attached to it,[75] but the evidence was not incorporated into the Motion Re-Urging Dismissal.

The Executor timely filed responses to the Motion Re-Urging Dismissal and the other two motions that had been filed on the same day.[76] All three responses were accompanied by evidence,[77] to which Shelby never objected. The Executor's response to the Motion Re-Urging Dismissal expressly incorporated by reference the

---

[73] R. 01553-01744.

[74] R. 01745-97.

[75] R. 01562-1744, 01561-1797.

[76] R. 02160-290, 01809-914, 01915-2159.

[77] R. 01822-1913, 01931-2158, 02167-2289.

20

evidence attached to the other two responses,[78] so all of that evidence is properly considered as part of the record in this original proceeding.

On September 16, 2015, the day before the motions were set for hearing, Shelby filed reply briefs in support of all three pending motions, and each of them was accompanied by evidence.[79] The reply in support of the Motion Re-Urging Dismissal did not incorporate by reference the evidence attached to the other two replies, or any other evidence, but it did refer to the litigation in Mexico City – the first time that Shelby identified it as relevant to his Motion Re-Urging Dismissal.[80]

On September 17, 2015, the Trial Court convened a hearing on the Motion Re-Urging Dismissal and the other two motions filed by Shelby.[81] Shelby did not offer any evidence during the hearing, but the Executor did, and it was admitted.[82]

Twelve days later, the Trial Court denied the Motion Re-Urging Dismissal, as well as the other two motions filed by Shelby.[83]

---

[78] R. 2161.

[79] R. 02291-321, 02322-463, 02464-577.

[80] R. 02464-65, 02477-551.

[81] R. 02589-643.

[82] R. 02626-27, 2629-31.

[83] R. 02586-88.

21

Finally, on October 28, 2015, Shelby filed the Petition, thereby commencing the instant case. The Petition seeks relief with respect to only one of the three motions filed by Shelby on August 27, 2015: the Motion Re-Urging Dismissal. Shelby is *not* asking this Court to order the Trial Court to grant either Shelby Longoria's Motion to Dismiss the Estate's Counterclaims Relating to Dorothy Longoria's Banamex Accounts or Shelby Longoria's Motion to Dismiss the Estate's Counterclaims Arising Out of the Donation Contract. Thus, Shelby now concedes that the forum-selection clauses in the Banamex contract and the Donation Contract do *not* require dismissal of any of the Executor's counterclaims.

**The Executor's Counterclaims Against Shelby.** The nature of the Executor's Counterclaims has not changed since the Trial Court heard Shelby's First Motion To Dismiss – except for the addition of a claim for declaratory relief relating to an instrument known as the "Donation Contract." When the Trial Court heard Shelby's First Motion To Dismiss, the Executor's counterclaims repeatedly averred that his causes of action are based on Texas law, and *only* on Texas law.[84] In addition, he

---

[84] R. 00729 (¶¶ 19, 22), 00732 (¶¶ 33, 35), 00733 (¶¶ 36-39), 00735 (¶ 44), 00737 (¶¶ 48-49), 00738-40 (Prayer for Relief).

made numerous averments of specific facts occurring in Texas.[85] These averments have not been deleted by amendment.[86]

The Executor pleaded (and still pleads) that a fiduciary relationship existed between Shelby and Dorothy, and it arose both out of an informal confidential relationship and by express agreement.[87] Two letters evidencing that relationship and agreement, and signed by Shelby in Texas, were (and still are) specifically identified by the Executor.[88] Both letters were admitted into evidence during the hearing on Shelby's motion to dismiss.[89] The second of them is dated October 9, 2007, when both Shelby and Dorothy indisputably lived in Texas, and it dealt specifically with a large sum of money, $450,000 in currency of the United States, that Shelby was, by his own admission, holding for the benefit of Dorothy.[90] The Executor averred (and proved at the hearing) that Dorothy and Eduardo were married in Texas, so all of their

---

[85] R. 00724 (¶ 2), 0000726 (¶¶ 9-10), 00727 (¶¶ 12, 16), 00728 (¶ 17), 00729 (¶¶ 19-20, 23-25), 00730 (¶¶ 26-28).

[86] R. 01525-52.

[87] R. 00727 (¶¶ 15-16), 00728 (¶ 18), 00729 (¶ 24).

[88] R. 00727 (¶ 16), 00728 (¶ 17).

[89] Supp. R. 0087-88 (Ex. P-1), 02262 (Ex. D-5).

[90] R. 02262 (Ex. D-5).

23

property was presumptively community property,[91] but the Executor also averred that property that was held (or should have been held) by Shelby in trust for Dorothy included not only property that was (or had been) her community property, but other property as well.[92] It is therefore inaccurate to say, as Shelby does, that the Executor's case depends entirely on the existence of community property; the Executor averred (and still avers) that Shelby breached his fiduciary duty with respect to Dorothy's separate property as well.[93] One example, specifically identified by the Executor, is the $450,000 referenced in the letter of October 9, 2007.[94] Another example are funds in Mexican bank accounts that were owned by Dorothy, as discussed in the next section. With respect to all such property, the Executor averred (and still avers) that Shelby breached, in a multitude of ways, his fiduciary duty to Dorothy and his express agreements with her.[95]

**Misappropriation of Funds Withdrawn from Mexican Accounts.** The Executor's counterclaims against Shelby have always included claims for breaches

---

[91] R. 00726 (¶ 9), 00729 (¶ 22), 02261-62 (Ex. D-4).

[92] R. 00726 (¶¶ 9-11), 00727 (¶¶ 13-15), 00729 (¶¶ 19-24), 00732-33 (¶ 35).

[93] R. 00732-33 (¶ 35).

[94] R. 00728 (¶ 17).

[95] R. 00729 (¶¶ 19-20, 24-25), 00732-33 (¶ 35), 00735 (¶ 43), 00737 (¶ 48).

of fiduciary duty in connection with his management of "property *and accounts*" of Dorothy.[96]  In 2013, less than two months after he commenced this case, and in response to a formal request from the Executor, Shelby produced a large number of statements for accounts at two Mexican banks, Banamex and BanRegio.[97]  The statements dated back to 1999, and all of the accounts were in the name of Dorothy alone.[98]  The address on the statements, however, was not Dorothy's address, and she had never received them.[99]

Enormous amounts of money – over $11,800,000 U.S. dollars and over $183,000,000 Mexican pesos, worth about $16,900,000 U.S. dollars – flowed through Dorothy's accounts – but only a tiny fraction of those amounts were ever received by her in the United States.[100]  Shelby admits that *he* arranged for withdrawals to be made from the accounts, and that Dorothy received only "about $200,000 per year" from the accounts.[101]  Shelby also admits that he was the president or chairman of

---

[96] R. 00038 (¶ 15).

[97] R. 02476.

[98] R. 01879-82.

[99] R. 01849.

[100] R. 01692-1744, 01852 (¶ 6).

[101] R. 01887 (¶ 23).

Grupo Inlosa when money was being withdrawn from Dorothy's accounts by employees of Grupo Inlosa.[102] The Director of Finance for Grupo Inlosa understood that Shelby was the "upper level owner" of the conglomerate.[103]

Shelby used Dorothy's accounts to funnel money to himself, to his wife (a resident of Texas), to his brother (another resident of Texas), and to businesses controlled by Shelby and operated for his benefit.[104] Dorothy did not know that Shelby was doing so and she was not sent the bank statements reflecting the withdrawals from her accounts.[105] Shelby now denies having *any* records of the dates or amounts of the payments to himself, his wife, and his brother of money withdrawn from Dorothy's accounts, though he admits that such payments were made.[106]

Shelby contends that Dorothy "was told" that her accounts were being used for inter-company loans among the companies in "Grupo Inlosa," i.e., one such company would deposit money in Dorothy's account and it would be withdrawn and paid to

---

[102] R. 02630-31.

[103] R. 02630.

[104] R. 01852 (¶ 8), 01893, 01900-01. Since 2007, Shelby has been identified as the sole beneficiary of the Afirme Trust. R. 02263-81.

[105] R. 01849, 01879.

[106] R. 01852 (¶ 10), 01913, 01893.

another company in the organization.[107]   But Dorothy was not an officer of any company in Grupo Inlosa.[108]   And Shelby claims that she owned no interest in Grupo Inlosa because, according to him, she surrendered her community-property rights in 1983.[109]   Apparently, Shelby contends that his elderly mother willingly allowed her accounts to be used by Mexican companies, in which she owned no interest and held no position, to launder tens of millions of dollars – just because she was Shelby's mom.  But the record contains no documentary evidence whatsoever that any inter-company transfer of funds, through an account of Dorothy, was ever disclosed to Dorothy – or ever approved by her.  As both Dorothy and Shelby lived in Texas throughout this period of misuse of the funds withdrawn from Dorothy's accounts, the Executor contends that, with respect to such activity, Shelby owed, and breached, a fiduciary duty to Dorothy under Texas law.[110]

The Executor does not contend, and has never pleaded, that Shelby is liable as an *alter ego* of Grupo Inlosa.  Shelby's contention that Mexican law is controlling

---

[107] Petition at 7-8; R. 02556-58.

[108] R. 02556.

[109] Petition at 1-2.

[110] R. 01529-31, 01536-37.

because the Executor supposedly is attempting to pierce the corporate veil of Mexican companies is, therefore, factually unfounded.[111]

**The Disputed Donation Contract.** In 2014, the Executor discovered another way in which Dorothy had been cheated by Shelby: Shelby had arranged to have Dorothy's money used to satisfy obligations owed by his father, Eduardo, pursuant to contracts between him and Shelby's sisters, Adriana and Sylvia (the so-called "Private Agreements").[112] Dorothy was not a party to the Private Agreements[113] and had no duty to make the payments, but Shelby arranged for her money to be used for that purpose because he knew, at least since 1988, that he might not inherit any of Dorothy's wealth, while he certainly was a beneficiary of Eduardo's estate.[114] When Shelby was sued for this flagrant misuse of Dorothy's funds, he conveniently came up with an alleged contract by which Dorothy supposedly had assumed Eduardo's payment obligations to Adriana and Sylvia. This alleged contract – the Donation Contract – was not produced by Shelby until January 8, 2015, about 17 months after

---

[111] *See* Petition at 24-25.

[112] R. 02037. *See* Petition at 2, 4, 8-9.

[113] R. 01964-67.

[114] R. 00022-23 (¶¶ 2, 5-6).

he should have produced it in response to the Executor's request for production, and over ten months after he had been *ordered* by the Trial Court to produce it.[115]

On February 11, 2015, the Executor filed amended counterclaims in which the Executor requested a declaratory judgment that the Donation Contract is unenforceable because (1) it is forgery, (2) Eduardo lacked the mental capacity necessary to make a contract (he was in hospice care on the date of the Donation Contract and died fifteen days later[116]), (3) lack of consideration, and/or (4) failure of consideration.[117] These averments are supported by compelling evidence.[118]

---

[115] R. 01968-69, 01971-79. By order dated January 29, 2014, Shelby was commanded by this Court to produce documents such as the Donation Agreement no later than February 28, 2014. R. 01968-69, 01984, 02005-07.

[116] R. 01958 (¶ 4).

[117] R. 01487-89 (¶¶ 53-61).

[118] R. 02121-58; 01958-60; 01969-70 (¶¶ 6-8), 02015, 02019-20 (Donation Contract says it was signed in Reynosa, Mexico, but witness says its was signed in Laredo, Texas), 02021 (witness advised Shelby of Donation Contract within a month of alleged execution), 02032 (¶ 23) (Shelby denies awareness of Donation Contract).

## ARGUMENT

## The Trial Court Did Not Abuse Its Discretion by
## Declining – Again – To Dismiss the Executor's Counterclaims

**I.**    **To Show Himself Entitled To Dismissal, Shelby Was Required to Bear a "Heavy Burden" To "Clearly Show" Facts That "Strongly Favor" a "Specific, Available, and Adequate" Alternative Forum, While Giving "Substantial Deference" To This Forum**

In this proceeding, Shelby does not merely assert that the Trial Court *could* have dismissed the Executor's counterclaims, but rather that the Trial Court was *required as a matter of law* to dismiss the Executor's counterclaims – based on the common-law doctrine of *forum non conveniens* – even though Shelby lives in Texas, the Executor lives in Texas, the third-party defendants live in Texas, the decedent who was the victim of Shelby's torts lived in Texas for the last 25 years of her life, and the decedent's estate is being administered in Texas. Even in the face of these facts, Shelby insists that the Trial Court had *no discretion* to deny his motion to dismiss, that dismissal was *absolutely mandatory*, even though he concedes, as he must, that the Trial Court has jurisdiction over the subject matter and all of the parties[119] – *jurisdiction which no Mexican court would have.*

In making this rather remarkable argument, Shelby never mentions – let alone applies – the correct legal standard. Shelby cites neither the most recent case in

---

[119] R. 00873.

which the Supreme Court of Texas made a common-law *forum non conveniens* determination nor the most recent case in which the Supreme Court of the United States did so. Though ignored by Shelby, both cases are instructive here. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422 (2007); *Quixtar, Inc. v. Signature Mngmt. Team LLC*, 315 S.W.3d 28 (Tex. 2010).

In both cases, it was held that a defendant seeking dismissal for *forum non conveniens* "ordinarily bears a *heavy burden* in opposing the plaintiff's chosen forum." *Quixtar*, 315 S.W.3d 28, 31 (Tex. 2010) (quoting *Sinochem,* 549 U.S. at 430) (emphasis added).[120] But Shelby never acknowledges the "heavy burden" imposed on him by common law. Instead, Shelby jumps ahead to address the adequacy and availability of a Mexican forum, and various factors of private and public interest. By considering those criteria without reference to the controlling legal standard, Shelby's argument wanders aimlessly – and leads to a manifestly unjust conclusion.

---

[120] In making *forum non conveniens* determinations, the Texas Supreme Court has routinely applied the standards enunciated by the United States Supreme Court. *Quixtar*, 315 S.W.3d at 32 ("we regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases"). Shelby admits that "Texas takes its common-law forum non conveniens doctrine from the equivalent federal doctrine," Petition at 18 (citing *Benz Group v. Barreto*, 404 S.W.3d 92, 96 (Tex. App. – Houston [1st Dist.] 2013, no pet.)), yet Shelby largely ignores the federal case law in his presentation to this Court.

31

In direct contradiction of entire thrust of Shelby's argument, both the U.S. Supreme Court and the Supreme Court of Texas, in their most recent decisions, declared that "substantially" greater deference must be paid to a claimant's choice of forum where – as here – the claimant lives within the forum. *Sinochem*, 549 U.S. at 430; *Quixtar*, 315 S.W.3d at 31. This requirement of greater deference to the claimant's choice of his own place of residence as the venue of the litigation is deeply rooted in the common law of *forum non conveniens*, dating at least to *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518 (1947), in which the Court wrote:

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

330 U.S. at 524. The Supreme Court has repeatedly confirmed the continuing validity of this standard. *Sinochem*, 549 U.S. at 429; *American Dredging Co. v. Miller,* 510 U.S. 443, 447–448 (1994); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981). Yet Shelby never mentions it.

32

Even where the plaintiff does *not* reside in the forum, a defendant seeking dismissal for *forum non conveniens* "must make a showing that the 'relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum.'" *DiFederico v. Marriot Int'l, Inc.*, 714 F.3d 796, 802 (7th Cir. 2013) (quoting *Jiali Tang v. Synutra Int'l, Inc.,* 656 F.3d 242, 246 (4th Cir.2011)) (emphasis in original). But when the plaintiff chooses his "home forum," the plaintiff's choice of forum is entitled to *even greater* deference. *DiFederico*, 714 F.3d at 802-03 (citing *Piper Aircraft,* 454 U.S. at 255-56). The forum in which the plaintiff is a citizen is "presumptively convenient," *Piper Aircraft*, 454 U.S. at 256, and should be overridden *only* when the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Koster,* 330 U.S. at 524. As long as there is a "real showing of convenience by a plaintiff who has sued in his home forum [it will] normally outweigh the inconvenience the defendant may have shown." *Id.*

"Overwhelming authority" stands for the proposition that courts *must* give substantially greater deference to the claimant's choice of forum when the claimant is a citizen of the forum. *DiFederico*, 714 F.3d at 803 (citing *Duha v. Agrium, Inc.,* 448 F.3d 867, 873 (6th Cir. 2006). *See also SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101 (11th Cir. 2004) (explaining that the

33

"presumption in favor of the plaintiff's initial forum choice . . . is at its strongest when the plaintiffs are citizens, residents, or corporations of this country"); *Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142, 146 (2d Cir. 2000) (reversing because the district court did not recognize that the plaintiff is "entitled to greater deference" when choosing her home forum); *Reid–Walen v. Hansen,* 933 F.2d 1390, 1395 (8th Cir. 1991) ("[c]itizens should rarely be denied access to courts of the United States"); *Founding Church of Scientology of Washington, D.C. v. Verlag,* 536 F.2d 429, 435 (D.C. Cir. 1976) ("[c]ourts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country")).

In sum, the Supreme Court has admonished that "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947) (emphasis added), and that jurisdiction is to be declined only in "exceptional circumstances." *Id.* at 504. "Forum non conveniens is an exceptional tool to be applied sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Boston Telecomms. Group Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir.2002)).

34

This Court has acknowledged that "[u]nless the balance weighs heavily in favor of the defendant, a court should rarely disturb the plaintiff's choice of forum." *In re Old Rep. Nat. Title Ins. Co.*, No. 14-10-01219–CV, 2011 WL 345676, at *2 (Tex. App. – Houston [14th Dist.] Feb. 1, 2011, orig. proceeding) (citing *In re ENSCO Offshore Intern. Co.*, 311 S.W.3d 921, 928–29 (Tex. 2010)). *Accord SES Prods., Inc. v. Aroma Classique, LLC*, No. 01-12-00219-CV, 2013 WL 2456797, at *3 (Tex. App. – Houston [1st Dist.] June 6, 2013) (citing *Sinochem*, 549 U.S. at 430; *Gulf Oil*, 330 U.S. at 508; *Quixtar*, 315 S.W.3d at 31)).

These black-letter principles are ignored in the Petition, yet they constitute the overarching standard by which courts are to evaluate the various factors relevant to *forum non conveniens* determinations. Because Shelby considers those factors without reference to the controlling standard, Shelby's analysis is meaningless.

## II. The Standard for Dismissal Under the Common Law Is More Stringent Than the Standard Under the *Forum Non Conveniens* Statute, Which Is Inapplicable Here

The argument presented by Shelby contains another material error: it fails to distinguish cases governed by the common law from cases governed by the Texas *forum non conveniens* statute, TEX. CIV. PRAC. & REM. CODE ANN. § 71.051 (West 2005). The statute is applicable only to actions for personal injury or wrongful death, TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(i) (West 2005), so it has no bearing

35

here. *Forum non conveniens* cases under the common law are "clearly distinguishable" from cases under the statute. *Liberty Mutual Ins. Co. v. Transit Mix Concrete and Materials Co.*, No. 06-12-00117-CV, 2013 WL 3329026, at *8 (Tex. App. – Texarkana June 28, 2013, no pet.).

This settled point of law severely erodes the legal basis of Shelby's argument, because he relies heavily on cases that were governed by the statute, not by common law. In fact, Shelby cites a total of five cases in which Texas courts issued writs of mandamus to compel dismissal based on *forum non conveniens*, and four of those cases were governed by Section 71.051, not by the common law.[121] The only exception is *In re SXP Analytics, LLC*, No. 14-11-01039-CV, 2012 WL 1357696 (Tex. App. – Houston [14th Dist.] Apr. 13, 2012, orig. proceeding), a case in which the facts supporting dismissal were so overwhelming as to expose Shelby's position, by comparison, as very weak indeed.[122]

---

[121] Petition at 19 (citing *In re Bridgestone Americas Tire Operations LLC*, 459 S.W.3d 565 (Tex. 2015)); 17, 20, 26 (citing *In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921 (Tex. 2010)); 19, 21 (citing *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670 (Tex. 2007)); 19, 26, 29 (citing *In re BPZ Resources, Inc.*, 359 S.W.3d 866 (Tex. App. – Houston [14th Dist.] 2012, orig. proceeding)).

[122] *SXP* was a dispute between two residents of Wisconsin over ownership of a Wisconsin company. 2012 WL 1357696 at *1. For an irrelevant period of time, more than two years before the dispute arose, the company had done business in Houston, and one of the parties had lived here, before returning to Wisconsin and consolidating all of the company's operations there. *Id.* That party sought to

Shelby had a powerful incentive to "gloss over" the distinction between statutory *forum non conveniens* and common-law *forum non conveniens*:  as the Supreme Court of Texas has observed, in cases decided under the common law, the private-interest factors and public-interest factors must "strongly favor" the movant in order for dismissal to be warranted, but under the statute, a mere tipping of the balance in favor of the movant is all that is required.  *In re ENSCO Offshore International Co.*, 311 S.W.3d 921, 928-29 (Tex. 2010).

Before leaving Section 71.051, another important feature should be noted:  it strictly precludes *forum non conveniens* dismissal where the claimant is "a legal resident of this state or a derivative claimant of a legal resident of this state."  TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e) (West 2005).  Thus, the legislature upheld the strong public policy, recognized in the common law for at least 70 years,[123] in favor of the rights of residents to bring suit in their home forum.

---

maintain in Houston a lawsuit seeking to be declared the one-third owner of the Wisconsin company, and a court-supervised accounting of its business.  This Court held that the litigation should be conducted in Wisconsin.  *Id.* at *5-6.

[123] *Koster*, 330 U.S. at 523-24.

37

**III.** **Shelby's Argument Depends on Affidavit Testimony That**
**He Did Not Offer in Support of the Motion Re-Urging Dismissal,**
**and That the Trial Court Was Not Obliged to Believe**

**A.** **The Petition Cites Affidavits and Exhibits That**
**Were Not Cited in the Motion Re-Urging Dismissal**
**or Offered During the Hearing on That Motion**

In support of his Petition, Shelby cites affidavits and exhibits that were not presented to the Trial Court in support of his Motion Re-Urging Dismissal.[124] Not only did Shelby fail to offer such materials during the hearing on that motion, he failed even to attach them to the motion, or to his reply brief in support thereof.[125]

Shelby has no right to mandamus relief based on evidence that was neither offered nor admitted in the Trial Court. During the hearing on Shelby's Motion Re-Urging Dismissal, Shelby did not call any witnesses or offer any evidence. The motion incorporates – in the most general terms – "his previous motion in favor of forum non conveniens dismissal; all supporting exhibits and affidavits; and related hearing transcripts/testimony."[126] But the Motion Re-Urging Dismissal does not specifically cite any testimony or exhibits at all. And the evidence incorporated into the Motion Re-Urging Dismissal – i.e., the evidence that had been submitted in

---

[124] *See* note 8 *supra* at 1.

[125] R. 01798-01808; 02464-02577; 02589-02616.

[126] R. 01798.

support of Shelby's First Motion To Dismiss – was insufficient to require dismissal, as the Trial Court, this Court, and the Supreme Court of Texas all held.

At the hearing on Shelby's First Motion To Dismiss, Shelby called two witnesses: himself and an expert witness by the name of Carlos Alberto Enrique Jose Lorenzo Gabuardi Arreola (hereinafter referred to as "Carlos").[127] But Shelby's Motion Re-Urging Dismissal does not cite any of their testimony from the hearing. Likewise, Shelby's Petition in *this* proceeding does not cite any of their testimony from the hearing. The testimony offered by Shelby during the hearing on Shelby's First Motion To Dismiss is, therefore, a non-factor in this proceeding.

In his Petition, Shelby cites and quotes extensively from testimony that was not presented by Shelby to the Trial Court in support of his Motion Re-Urging Dismissal.[128] Not only did Shelby fail to offer such evidence during the hearing, he failed even to attach it to his Motion Re-Urging Dismissal, or to his reply brief in support thereof. The Trial Court was not required to search the record to find evidence that might support Shelby's argument but was not cited by Shelby in support of his motion. *Cf. Moon Sun Kang v. Derrick*, No. 14-13-0086-CV, 2014 WL 2048424, at *7 (Tex. App. – Houston [14th Dist.] May 15, 2014, pet. denied); *Lee*

---

[127] R. 00896-935 (testimony of Shelby); 00936-59 (testimony of Carlos).

[128] *See* note 8 *supra* at 1.

*v. Palacios*, No. 14-06-00428-CV, 2007 WL 2990277, at \*7 (Tex. App. – Houston [14th Dist.] Oct. 11, 2007, pet. denied).

### B. The Petition Cites Testimony That the Trial Court Was Not Required To Believe

The *only* testimony specifically cited by Shelby to the Trial Court, in support of Shelby's Motion Re-Urging Dismissal, was cited by Shelby in a reply brief filed on the day before the hearing.[129] That testimony consisted of two pages of deposition testimony by Marco Antonio Torres Garza and four pages of deposition testimony by Patricia Vazquez.[130] The testimony is far from sufficient to carry Shelby's heavy burden to establish facts justifying dismissal of the Executor's counterclaims.

Moreover, the Trial Court was not obliged to accept the testimony as true. A trial judge who is charged with resolving issues of fact is empowered to make credibility determinations, and may choose to believe one witness over another; and a reviewing court may not impose its own opinion to the contrary. *Howeth Investments, Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 894 (Tex. App. – Houston [1st Dist.] 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex.

---

[129] R. 02464-73.

[130] R. 02466-68 (testimony of Torres); 02468-71 (testimony of Vazquez). These two Mexican witnesses voluntarily came to Texas to give depositions at Shelby's request, thus disproving his argument that they will be unavailable to testify if the case is tried here.

2005)).  It is not necessary to have testimony from both parties before the trier of fact may disbelieve either;  the trier of fact may disregard even uncontradicted and unimpeached testimony from disinterested witnesses.  *City of Keller*, 168 S.W.3d at 819.  It is axiomatic that the trier of fact is the sole judge of the credibility of the witnesses, and appellate courts have no authority to make credibility determinations.  These principles, of course, apply in mandamus proceedings.  *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (citing *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990)); *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 306 (Tex. App. – El Paso 2009, orig. proceeding).

The insurmountable problem for Shelby in this mandamus proceeding is the lack of *conclusive* evidence supporting his position on any of the criteria for *forum non conveniens*, in a case in which he bears the burden of proof with respect to every criterion.  The Trial Court was not required to believe the testimony of Torres and Vazquez, and, without their testimony, Shelby has no testimony beyond that which has already been held insufficient.  Shelby simply has no colorable argument that he carried his heavy burden to prove facts that would have required the Trial Court to dismiss the Executor's counterclaims for *forum non conveniens* in the face of the substantial deference to be afforded this forum.

41

**IV.    Shelby Failed To Prove That Any Particular State in Mexico
Is an Adequate and Available Forum for This Case**

**A.    Shelby's Failure To Identify a *Specific*
Alternative Form Is Fatal to His Petition**

In order to prevail on a motion to dismiss for *forum non conveniens*, the movant must first demonstrate that there is a "*specific*, adequate, and available alternative forum.'" *DiFederico*, 714 F.3d at 802 (quoting *Jiali Tang,* 656 F.3d at 246) (emphasis added).  In his Motion Re-Urging Dismissal, and in his Petition to this Court, Shelby failed to identify the specific forum advocated by him;  he asserted only that the Executor must pursue his claims somewhere "in Mexico."  But Mexico has a federal system in which states enact and enforce their own laws, and laws vary from one Mexican state to another.[131]  Shelby's Motion Re-Urging Dismissal in the Trial Court – like his Petition to this Court – did not say where, exactly, Shelby contended that the Executor should have asserted his claims – a deficiency that was fatal in itself, in light of the movant's burden to demonstrate that a *specific* alternative forum is available and adequate.

Because a *forum non conveniens* inquiry is so dependent on the particular characteristics of the forum and their relationships to the particular characteristics of the litigation, Shelby's failure to identify the *specific* alternative forum advocated by

---

[131] R. 02230.

42

him severely impairs the ability of the Executor to respond to Shelby's argument – but we will do the best we can. Although Shelby never declares that Mexico City is the alternative forum advocated by him, he does cite the fact that the Executor is pursuing litigation against Shelby and others there, so we will address the issue whether Shelby proved that Mexico City is an adequate and available alternative forum. And although Shelby never declares that the Mexican State of Tamaulipas is the alternative forum advocated by him, he did present, in connection with his wholly unsuccessful First Motion To Dismiss, testimony of an expert witness who made reference to the laws of that state,[132] so we will address the issue whether Shelby proved that Tamaulipas is an adequate and available forum.

**B.**    **Shelby Failed To Prove That Mexico City Is an Adequate and Available Forum for This Case**

**1.**    **In the Trial Court, Shelby Offered No Evidence That Litigation of the Executor's Counterclaims Would Be Possible in Mexico City**

Shelby failed to present to the Trial Court any evidence as to the substantive law of Mexico City. He did not prove that the Executor could obtain a remedy there for Shelby's various breaches of his fiduciary duty to his mother. The only evidence presented to the Trial Court on that subject was the uncontroverted testimony of

---

[132] R. 01080, 01083-85.

43

expert witness Ilan Rosenberg that private fiduciary relationships are not recognized anywhere in Mexico.[133]

Shelby did, however, point out that the Executor and Shelby are involved in ongoing litigation in Mexico City. But the mere fact that Executor is pursuing a civil action there does not prove that all of the Executor's counterclaims that are pending in the Trial Court should be dismissed and re-filed in Mexico City. That is the relief demanded by Shelby, so it is his burden to prove that the alternative forum is available and adequate to resolve all of those counterclaims. He has not done so.

### 2. The Suit in Mexico City Is Completely Different: It Seeks To Set Aside a Mexican Trust and Seeks Relief from Mexican Banks That Were Trustees

In Mexico City, the Executor has sued (a) Shelby as the purported executor of Eduardo's estate pursuant to a Mexican probate proceeding, (b) two Mexican banks as the original and successor trustees of the Afirme Trust, and (c) Shelby and his brother, individually, because they are named as beneficiaries of the Afirme Trust.[134] The relief sought by the Executor is:

(1) a declaration that a purported marriage of Dorothy and Eduardo in Nuevo Laredo, Mexico, on January 15, 1943, was a legal nullity;

---

[133] R. 02239.

[134] R. 02518-19.

44

(2)     a declaration that a purported agreement, dated October 31, 1983, to divide their community property into separate estates was a legal nullity;

(3)     a declaration that, based on her marriage to Eduardo in Texas, Dorothy had community-property rights and she retained those rights until she died;

(4)     a declaration that the Afirme Trust, purportedly formed on October 15, 2002, was a legal nullity and subsequent actions of the trustees likewise were legal nullities;

(5)     an order to restore to Dorothy's estate the shares that were illegally placed by Eduardo into the Afirme Trust, or an amount of money equal to the "highest commercial value" that the shares have had since then, and all dividends and other benefits derived from the shares;

(6)     an accounting, attorney's fees, and other miscellaneous relief.[135]

Without any explanation, Shelby calls these "the very same claims" as those initially pleaded by the Executor in Houston.[136]   But saying it does not make it so. In the Trial Court, the Executor's has always and only sought relief from *Shelby*, individually.  And the relief sought from Shelby, individually, has always and only been money damages resulting from *his* breaches of duties that *he* owed to Dorothy

---

[135] R. 02519-23.

[136] Petition at 20.

under Texas law, and an accounting for, and constructive trust on, property *he wrongfully obtained through his corrupt, self-serving management of his mother's property* – including but not limited to her community property. In the Houston case, the Executor has not asked the Trial Court to declare that the 1983 marital-property agreement is a nullity, or to declare that the Afirme Trust is a nullity, or to order the current trustee of the Afirme Trust to deliver shares of stock, or the value thereof, to the Executor, or to order the current and former trustees to render accountings, or to order them to pay to the Executor all financial benefits derived from the shares in the trust, or any of the other relief requested in Mexico City. The claims asserted in this case are not, and never have been, the same as the claims asserted in Mexico City.

### 3. The Suit in Mexico City Was 15 Months Old When Shelby Filed His Motion Re-Urging Dismissal, and He Did Not Mention That Suit in His Motion

The notion that the Executor's lawsuit in Mexico City requires a *forum non conveniens* dismissal of the Executor's counterclaims in the Trial Court is a recent invention of Shelby's counsel. The Executor filed the lawsuit in Mexico City on May 23, 2014.[137] Shelby did not file his Motion Re-Urging Dismissal until August 27, 2015, some fifteen months later, and when he did so, *he made no mention of the*

---

[137] R. 02551.

46

*litigation in Mexico City.*[138]  Not until September 16, 2015 – the day before the hearing on his Motion Re-Urging Dismissal – did Shelby take the position that the lawsuit in Mexico City somehow supports that motion.  The two cases proceeded on parallel tracks for well over a year, without incident or inefficiency.  The argument that a longstanding case in Texas, which involves four residents of Texas and claims only under Texas law, *must* be dismissed because of a more recent lawsuit in Mexico City, which involves two of those four parties but also involves two Mexican banks and the executor of an estate being administered in a Mexican probate court, and claims under Mexican law, requires credulity for acceptance.

### C.  Shelby Failed To Prove That Tamaulipas Is an Adequate and Available Forum for This Case

We turn now to Tamaulipas, the only other venue in Mexico about which Shelby has proffered any evidence at all.  The first key point to be made here is that, in connection with his Motion Re-Urging Dismissal, Shelby offered *no new evidence* concerning the suitability of Tamaulipas as an alternative forum for the litigation of the Executor's counterclaims against him.  In other words, Shelby's position is no better that it was when his position was rejected by the Trial Court, by this Court, and by the Supreme Court of Texas.

---

[138] R. 01798-808.

For three reasons, Tamaulipas is not an available and adequate forum for litigation of the Executor's counterclaims: first, the courts of Tamaulipas would not have jurisdiction over the counterclaims themselves or over Shelby's third-party claims against Sylvia and Adriana; second, the causes of action pleaded by the Executor are not recognized in Tamaulipas (or anywhere in Mexico), so no remedy is available there; third, the Executor's claims would be time-barred in Tamaulipas by an unwaivable statute of repose. Each of these three points precludes the relief sought by Shelby.

### 1. The Courts of Tamaulipas Would Not Have Jurisdiction over the Executor's Claims Against Shelby or His Third-Party Claims

"A foreign forum is available when the *entire* case and *all* parties can come within the jurisdiction of that forum." *Adams v. Merck & Co. Inc.,* 353 Fed. App'x 960, 962 (5th Cir. 2009) (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (emphasis added)).

In opposition to the Motion Re-Urging Dismissal, the Executor presented the affidavit of Ilan Rosenberg, a highly qualified expert in Mexican law,[139] and testimony he had given during the hearing on Shelby's First Motion To Dismiss.[140]

---

[139] R. 02209, 02229-02242 (Ex. D-1).

[140] R. 02205-19.

Mr. Rosenberg testified that if the Executor were to file in Tamaulipas the claims that he has pleaded as counterclaims here, the court in Tamaulipas would "almost certainly" dismiss those claims *sua sponte* for lack of jurisdiction.[141] This is the case whether or not Shelby submits to the jurisdiction of a court in Tamaulipas.[142]

More jurisdictional problems attend the third-party claims of Shelby against Sylvia and Adriana. The Third-Party Defendants will not voluntarily submit to the jurisdiction of the courts of Tamaulipas. Shelby's third-party claims against Sylvia and Adriana simply cannot be tried in Mexico.[143]

The Supreme Court has held that "the inability to implead potential third-party defendants" has bearing on a *forum non conveniens* determination. *Piper Aircraft,* 454 U.S. at 259. In that case, the putative third-party defendants were citizens of the alternative forum, so their citizenship militated in favor of dismissal. *Id.* Here, on the other hand, Shelby has pleaded third-party claims against two residents of the forum

---

[141] R. 02237-38 (¶¶ 28-34).

[142] R. 02237-38 (¶¶ 28-37). Contrary to Shelby's assertions, the *amparo* proceeding filed by Adriana and Sylvia in a *federal* court in Mexico is not a predictor of what a state court in Tamaulipas would do. R. 02240-42.

[143] R. 02232-38 (¶¶ 17-34).

49

where the case is pending.[144]  Neither of them is amenable to service of process in the proposed alternative forum or subject to the jurisdiction of its courts.[145]

But, it might be argued, Shelby's third-party claims against his sisters may be pursued in Houston *after* litigation of the Executor's claims is concluded in Tamaulipas.  Even if that is true, the inconvenience associated with having multiple proceedings is a factor to be weighed in the *forum non conveniens* analysis:

> It is true, of course, that if [the defendants] were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial.

*Piper*, 454 U.S. at 259*; see also Boston Telecomms.*, 588 F.3d at 1211 ("the inability to implead potential third-party defendants can be a factor").  So the existence of Shelby's third-party claims cut against his motion to dismiss and provided a valid basis for the Trial Court's denial of his motion.

---

[144] Supp. R. 0021 (¶¶ 2-3)).

[145] R. 02237-38 (¶¶ 28-34).

## 2. Tamaulipas Is Not an Adequate Alternative Forum Because It Provides No Remedy for the Executor's Causes of Action Against Shelby

The Executor's causes of action for breach of fiduciary duty do not exist in Mexican law generally or the law of Tamaulipas in particular.[146] Mexico would provide *no* recourse or remedy against Shelby, individually, for breaches of the fiduciary duty arising out of his informal fiduciary relationship with Dorothy, so as a matter of law no court in Mexico would be an adequate forum for litigation of the Executor's counterclaims.[147]

## 3. Tamaulipas Is Not an Available Alternative Forum Because the Executor's Claims Against Shelby Would Be Barred by an Unwaivable Statute of Repose There

If pleaded in Tamaulipas, the Executor's claims would be barred by an unwaivable statute of repose.[148] This, too, dooms the Petition. As a matter of law, a proposed alternative forum is not adequate if the claim would be time-barred there.

---

[146] R. 02239 (¶¶ 39-40).

[147] *Id.* The expert testimony proffered by Shelby on this point is unavailing. Carlos testified to the general propositions that Tamaulipas allows claims for money damages based on negligence, mismanagement, and fraud. R. 00946-47. He did not, however, state that Mexico provides any remedy for a breach of fiduciary duty arising out of an informal fiduciary relationship or a private trust. His testimony about other legal theories was too general to be of consequence, and it was effectively neutralized on cross-examination. R. 00951-55. The Trial Court was free to disregard it.

[148] R. 00976-77.

*See, e.g., Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir. 2001); *Vicknair v. Phelps Dodge Indus. Inc.*, 767 N.W.2d 171, 177-78 (N.D. 2009) (citing numerous cases).

Thus, for three independent reasons, Tamaulipas is not an available and adequate forum for litigation of the Executor's counterclaims against Shelby. Shelby failed to adduce evidence that *any* Mexican state is an adequate and available forum in which to litigate the claims against him. It was his burden to do so.

## V. Shelby Failed To Prove That The Private-Interest Factors and Public-Interest Factors Favor Litigation of the Executor's Claims in Any Other Forum

The most fundamental reason why the Petition, like Shelby's first petition for writ of mandamus, should be denied is that, once again, Shelby failed to *prove* facts showing that the relevant private-interest factors and public-interest factors "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster*, 330 U.S. at 524.

In *Quixtar*, the Supreme Court of Texas identified the relevant factors, after noting that the "central focus of the *forum non conveniens* inquiry is convenience."

52

315 S.W.3d at 33 (quoting *Piper Aircraft,* 454 U.S. at 249). "The well-known *Gulf Oil* factors direct courts to consider both public and private interest considerations in forum non conveniens dismissals." 315 S.W.3d at 33 (citing *Gulf Oil,* 330 U.S. at 508–09). "Private considerations include: (1) the 'relative ease of access to sources of proof'; (2) the 'availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses'; (3) the 'possibility of view of premises, if view would be appropriate to the action'; (4) the 'enforceability of a judgment' once obtained; and (5) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil*, 330 U.S. at 508).

"Public considerations include: (1) '[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its origin'; (2) the burden of 'jury duty . . . that ought not to be imposed upon the people of a community which has no relation to the litigation'; (3) 'local interest in having localized controversies decided at home'; and (4) avoiding conflicts of law issues." *Quixtar*, 315 S.W.3d at 33-34 (quoting *Gulf Oil*, 330 U.S. at 508–09).

When Shelby filed his Motion Re-Urging Dismissal, he tendered no new evidence at all. He relied entirely on the evidence presented with his First Motion To Dismiss,[149] which at every stage had been held to be insufficient. And during the

_____

[149] R. 01798-808, 01798 n.1.

hearing on his Motion Re-Urging Dismissal, Shelby offered no new evidence. The *only* new evidence presented by Shelby in connection with his Motion Re-Urging Dismissal was attached to his *reply brief* filed on the day before the hearing.[150] And it was never formally offered during the hearing.

Based on the evidence submitted, the Trial Court easily could have found that *none* of the relevant factors militates in favor of the alternative forum proposed by Shelby. And Shelby had the burden of proof as to every factor. *SES Prods.*, 2013 WL 2456797, at *3.

### A. All of the Private-Interest Factors Point to This Forum or Are Neutral

#### 1. Access to Relevant Evidence Is Far Better in This Forum

The Executor lives in Houston, Texas. Shelby lives in McAllen, Texas. The Third-Party Defendants – impleaded *by Shelby* – live in Houston, Texas. Thus, three of the four parties live in Houston, Texas, and all of them live in Texas.[151]

In addition to the parties, many other key witnesses live in Texas. The Executor advised the Trial Court of the following witnesses:

---

[150] R. 02476-577

[151] R. 00633-34, 00649, 00861.

54

♦   Eduardo Longoria, Jr. (also known as "Wayo" Longoria), who is Dorothy's other child (the brother of Shelby, Sylvia, and Adriana), and who lives in Austin, Texas

♦   Adrian Hernandez, who served as the personal accountant of both Dorothy and Shelby, and whose office is in Houston, Texas

♦   Pepe Treviño, a lawyer who provided estate-planning services to Dorothy and her husband and whose office is in Laredo, Texas

♦   Shelby's wife, Tita Longoria, who lives in McAllen, Texas, and who has knowledge of Dorothy's relationship with Shelby and transactions affecting the property of Dorothy

♦   Carolyn Beckett, a lawyer in Austin, Texas, who has represented Shelby in various matters related to his parents' estates, including a dispute with Adriana Longoria over Shelby's performance of the "Private Agreement" in 2010

♦   Attorneys, accountants, and appraisers involved in a 2007 transaction – negotiated and consummated in Texas – between Shelby and his brother, Wayo Longoria, in which Wayo was paid about $24,000,000 for his forty percent interest in a trust containing stock formerly held in the names of Dorothy and her husband

♦   Dorothy's friends, physicians, and caregivers with whom she spoke about her property and about Shelby and her other children during the last seven years of her life when she lived in Houston[152]

Against this array of witnesses, Shelby claimed in his brief in support of his First Motion To Dismiss – *but never proved* – that the following witnesses live in Mexico: the witnesses to execution of a will by Eduardo; the witnesses to execution of a trust

---

[152] R. 00756-57.

agreement by Eduardo; and Eduardo's "legal advisors, all of the Banca Afirme employees who managed the trust, and all of the employees of the Mexican Trust's Mexican businesses."[153] The supposed need for the testimony of these persons is contrived.

The Executor's counterclaims do *not* contest the will signed by Eduardo – so no testimony from those who witnessed the signing of that will is required. Likewise, the counterclaims do *not* dispute that Eduardo signed the trust agreement purporting to create the Afirme Trust – so the testimony of the witnesses to that signing is unnecessary. Shelby offered no evidence of the identities, whereabouts, or supposedly relevant knowledge of the unnamed legal advisors of Eduardo, or the unnamed employees of Banco Afirme, or the unnamed "employees of the Mexican Trust's Mexican businesses." *Shelby proved neither that such persons have knowledge of relevant facts nor that they are located in the State of Tamaulipas.* Indeed, he admitted that the Mexican businesses are in "various states in Mexico"[154] – not only in Tamaulipas – so he provided to the Trial Court no evidentiary basis on which the Trial Court could base a finding as to the number of witnesses in Tamaulipas or the significance of their testimony. "Conclusory allegations of need

---

[153] R. 00174.

[154] R. 00901.

as to unnamed witnesses and unspecified evidentiary materials are insufficient to establish the clear showing mandated by Gulf Oil Corp. that a balancing of conveniences strongly favors forum non conveniens dismissal." *Omni Hotels Mgmt. Corp. v. Round Hill Devs. Ltd.*, 675 F.Supp. 745, 752 (D.N.H. 1987) (citing *Gulf Oil*, 330 U.S. at 510-11). *Accord Fasules v. DDB Needham Worldwide, Inc.*, No. 89 C 1078, 1989 WL 55373, at *3 (N.D. Ill. 1987); *Mowrey v. Johnson & Johnson*, 524 F.Supp. 771, 777 (W.D. Pa. 1981).

Moreover, since Shelby controls the Mexican businesses,[155] the Trial Court reasonably could have inferred that Shelby already has, or easily can obtain, whatever information might be needed in connection with the Executor's counterclaims.

In his latest Petition, Shelby asserts that six potential witnesses – Saul Garza, Marco Torres, Marta Montelongo, Patricia Vazquez, Pedro Ramirez, and Arnulfo Cruz – "are Spanish-speaking Mexican residents who cannot be compelled to testify in the United States."[156] But Shelby cites *no evidence* to support this assertion, and in fact, Shelby presented no evidence of their residences in support of his Motion Re-Urging Dismissal. What the record *does* show is that two of them, Torres and

---

[155] R. 00901-03; 00923; 00925-26.

[156] Petition at 25.

Vazquez, appeared for depositions *in Texas*, and that Vazquez met with Dorothy *in Texas*.[157]

The bottom line is this: all of the potential witnesses who were specifically identified in the proceedings below reside in Texas, and most of them reside in the Houston, Texas.  To state the obvious, the location of the Trial Court is far more convenient for such witnesses than the location of any court in Tamaulipas, which is about 350 miles away and requires an international border-crossing to visit.

But distance is not the only obstacle – or even the most daunting obstacle – to obtaining in Tamaulipas the testimony of the many witnesses who live in Texas.  On May 5, 2015, the United States Department of State issued a "Travel Warning" about the security situation in Mexico.[158]  It provides a chilling view of travel in the "border region" – which, of course, includes Tamaulipas.[159]  The situation in Tamaulipas is so bad, in fact, that the public is advised to "defer all non-essential travel to the state of Tamaulipas" and employees of the U.S. Government are strictly prohibited from

---

[157] R. 02554, 02561, 02562.

[158] R. 02282-89.

[159] R. 02282-83 (emphasis added).

any personal travel to Tamaulipas."[160] "When travel for official purposes is essential, it is conducted with *extensive security precautions*."[161]

Shelby himself admits that "[c]artel violence, street shoot-outs, kidnapping, and extortion" have been "persistent threats" along the Mexican border.[162] For Shelby to claim that Tamaulipas is a more convenient venue than Houston – in the face of these harsh realities – betrays again a lack of candor to the Court.

On this point Shelby conflates two issues: the issue whether a forum is "adequate" and the issue whether a forum is "convenient." As this Court noted in *In re Longoria*, No. 14-15-00261-CV, 2015 WL 4380762 (Tex. App. – Houston [14th Dist.] July 16, 2015, orig. proceeding), a forum cannot be considered "inadequate" because of security issues unless the party asserting such inadequacy shows that litigating in the forum will be "so gravely difficult and inconvenient that she will for all practical purposes be deprived of her day in court." *Id*. at *10-11. We respect this Court's ruling, and what we are saying now is entirely consistent with it. We are not arguing that the dangerous conditions in Tamaulipas render that forum inadequate. Rather, our point is simply that the dangerous conditions in Tamaulipas make

---

[160] R. 02283-84.

[161] R. 02284 (emphasis added).

[162] R. 00159.

traveling to that forum inconvenient for the parties and witnesses, and their convenience is a private-interest factor that the Trial Court was entitled to consider.

The "central focus of the *forum non conveniens* inquiry is convenience," *Quixtar*, 315 S.W.3d at 33 (quoting *Piper Aircraft,* 454 U.S. at 249), and the warnings of the State Department certainly establish that travel in Tamaulipas is "inconvenient" – to say the least. Since even Shelby admits that many witnesses – including *all* of the litigants – live in Texas, the Trial Court could reasonably have found that some or all of the most important witnesses would be deterred from traveling to Tamaulipas in order to testify there.

Finally, it should be noted that Shelby has presented no evidence that Mexico City would be a more convenient forum than Houston for the litigation of the Executor's counterclaims against Shelby. He has not proven that a single witness lives in Mexico City. And he has not proven that it would be easier and safer for witnesses from the border towns to travel to Mexico City than to Houston. In fact, Houston is about 200 miles *closer* to Nuevo Laredo, Mexico, than Mexico City is!

2.  **Compulsory Process for Attendance of Unwilling Witnesses Is Available in This Forum, But Not in Mexico, and the Cost of Obtaining Attendance of Willing Witnesses Is Less Here**

All of the witnesses who live in Texas can be compelled by the Trial Court to testify, either in person or by deposition. *See* Tex. R. Civ. P. 176, 205. None of them

60

can be compelled to give testimony in a Mexican proceeding. For those witnesses who – despite the grave danger described above – might be willing to travel voluntarily to Tamaulipas, the expense of security precautions is prohibitive. As Shelby has offered no proof of the residency of the Mexican witnesses whose testimony, he says, is relevant to this case, this factor cuts against dismissal.

### 3. No View of Any Premises Will Be Needed

There is no need for the trier of fact to view any premises, as Shelby admits.[163]

### 4. A Judgment of the Trial Court Would Be Fully Enforceable as to All Parties, But a Judgment of a Mexican Court Would Not

Shelby ignores this factor, and the reason is obvious: it undercuts his argument. Shelby lives in Texas, and he filed the will contest which commenced this litigation. The Executor pleaded his counterclaims in response to Shelby's will contest. Thus, if the counterclaims are allowed to proceed in the Trial Court, the judgment of the Trial Court will be fully enforceable against Shelby and, of course, the Executor.

In addition, a judgment entered by the Trial Court on Shelby's third-party claims against Sylvia and Adriana would be fully enforceable. As both of them live in Houston, the Trial Court may exercise personal jurisdiction over them.

---

[163] R. 00178.

61

If, on the other hand, the counterclaims are dismissed as demanded by Shelby, he will not be able to pursue his third-party action, as no court in Mexico has jurisdiction over the Third-party Defendants.[164]  The litigation will become fragmented.  Duplicative proceedings, and multiple judgments, will be required to achieve a final resolution.

5. **The Practical Problems and Expense of Proceeding in Mexico Are Far Greater**

Shelby has not identified any specific problem that will arise from litigation of the Executor's counterclaims in the Trial Court but will not arise if the Executor pursues his claims in a court in Mexico.  The Executor, on the other hand, has identified significant problems with litigation in Tamaulipas.  The Executor has proven, and Shelby has admitted, that Tamaulipas is an exceedingly dangerous place, so anyone traveling there must incur unreasonable risk and incur substantial expense for security.[165]  This factor, therefore, points away from Tamaulipas.

Shelby's position regarding access to employees and documents of Grupo Inlosa is disingenuous because *he* controls Grupo Inlosa,[166] and he lives in Texas.  *Cf.*

---

[164] R. 02238 (¶ 34).

[165] R. 02282-89, 00159.

[166] R. 00901-03; 00923; 00925-26.

*Boston Telecomms.*, 588 F.3d at 1208 (finding it was "reasonable to assume" that documents which the movant represented to belong to foreign entities were in the possession of the chief executive officer, who resided in California and effectively managed the companies from there). During the hearing on his motion to dismiss, Shelby was evasive about his position in the Mexican holding companies, and even professed ignorance as to whether he is a corporate officer, but eventually he conceded that he may be "Chairman" and that he had directed the companies to pay hundreds of thousands of dollars to his mother.[167]

## B. All of the Public-Interest Factors Point to This Forum

### 1. The Dispute Originated Here and There Are No Greater Administrative Difficulties Here Than in Tamaulipas

This dispute arose in Texas. Shelby has lived in Texas since the 1970's. While living here, his fiduciary duty to Dorothy arose under Texas law and, the Executor contends, Shelby breached his duty under Texas law. Dorothy Longoria lived in Texas for her last 25 years, and lived in Houston for her last seven years. The alleged acts and omissions of Shelby, therefore, harmed a longstanding citizen of this forum. Dorothy's will was admitted to probate in this forum and her estate is pending in this

---

[167] R. 00925-56.

forum. Shelby himself commenced this legal proceeding by filing his will contest in this forum. This litigation originated in Texas and must be decided under Texas law.

Shelby has not asserted, let alone proven, that the Trial Court's docket is more congested than that of the courts of Tamaulipas. Shelby offered no evidence that a court in Tamaulipas (or anywhere else) would address the merits of the case more quickly than the Trial Court, or that litigation in Tamaulipas would be administratively easier. Indeed, there is every reason to believe that the opposite is true.

### 2. This Community Has the Strongest Relationship to the Litigation, So the Burden of Jury Duty Belongs Here

Both Shelby – the alleged wrongdoer – and Dorothy – the alleged victim – resided in this forum for the last 25 years of Dorothy's life, so this forum has the strongest relationship to the litigation. Dorothy died in Houston, her will was probated here, and her estate is being administered here by an executor who was empowered here, all in accordance with Texas law. Imposing the burden of jury duty here is justified. Doing so in Mexico is not.

## 3. The Dispute Arose in Texas, Between Texans, So This Forum Has the Stronger Interest in Deciding the Controversy

Because Dorothy lived and died in Texas, her estate is being administered in Texas, and the Executor of her estate has claims based on a fiduciary duty owed to Dorothy by another resident of Texas, this State has an interest in deciding the claims – an interest far greater than any that could be articulated for the State of Tamaulipas. As of the date of Dorothy's death, the Legislature of this State had enacted an array of statutes designed to ensure that probate courts may exercise jurisdiction over all matters related to estates pending in those courts. *See, e.g.,* TEX. PROB. CODE ANN. §§ 4A (providing that courts exercising original probate jurisdiction also have jurisdiction over all matters related to probate proceedings), 4B (defining "matter related to a probate proceeding" to include any claim by a personal representative on behalf of an estate), 4F (conferring on statutory probate courts exclusive jurisdiction over all probate proceedings), 5B (authorizing statutory probate courts to transfer *to themselves* actions pending in district or county courts if they are "related" to an estate pending in the probate court or if the personal representative of such an estate is a party). Underlying these statutes is a strong public policy in favor of consolidation, in the probate courts, of all matters related to the estates administered in those courts. The same public policy stands in opposition to dismissal for *forum*

65

*non conveniens* of an executor's claims pleaded, on behalf of an estate, in the probate court in which the estate is pending.

Shelby does not deny the existence or the importance of this public policy, and he cites no case in which the claims pleaded by the executor of an estate, in the court where the estate was being administered, were dismissed for *forum non conveniens*.

And there is still another public policy of the State of Texas that stands against dismissal of the Executor's counterclaims: the policy against piecemeal litigation of related controversies. The Executor's claims are *counterclaims*. There is substantial overlap between the subject matter of Shelby's will contest and the Executor's counterclaims: both involve inquiry into Dorothy's property, mental condition, and testamentary intent at various times during her adult life.[168] We do not contend that counterclaims may *never* be dismissed for *forum non conveniens*; but we do contend that dismissal of counterclaims, and especially counterclaims that are *closely related* to the plaintiff's claims, undercuts the public policy against fragmented litigation, and therefore that public policy is a "public-interest factor" that the Trial Court could, quite properly, have taken into account, even if it might not have been dispositive by itself. No case holds otherwise.

---

[168] In his will contest, Shelby makes allegations concerning Dorothy's property and her wills dating back to the 1980's. R. 00022-23.

## 4. Maintaining the Litigation Here
## Avoids an Issue of Conflicts of Law

The Executor's pleading states explicitly that it is founded entirely on Texas law, and includes numerous allegations of facts occurring in Texas.[169] Shelby asserts that Mexican law might supply the rule of decision but, in typical fashion, Shelby fails to explain why that is so or to identify specifically any Mexican law that would be controlling. We repeat: by his counterclaims against Shelby, the Executor is *not* contesting a will signed by Eduardo; the Executor is *not* contesting a trust agreement signed by Eduardo; the Executor is *not* asserting a cause of action under Mexican law; and the Executor is *not* seeking relief from any individual residing in Mexico or any Mexican business entity. There simply is no basis for Shelby's assertion that the Executor's counterclaims are governed by Mexican law.

The counterclaims are based on a fiduciary duty undertaken, and breached, by Shelby while he was a resident of Texas. The counterclaims also are based in part (but not entirely) on Dorothy's community-property rights under Texas law. Dorothy and Eduardo Longoria were married in Texas, which establishes that their marital estate was a community estate.[170] They were living together in Texas when Eduardo

---

[169] R. 00724 (¶ 2), 0000726 (¶¶ 9-10), 00727 (¶¶ 12, 16), 00728 (¶ 17), 00729 (¶¶ 19-20, 23-25), 00730 (¶¶ 26-28).

[170] R. 00867; 01160-61 (Ex. D-4).

died.[171]  The marriage began and ended in Texas.  Under Texas law, all of their property at the time of Eduardo's death is presumed to have been community property.  If Shelby contends that it was *not* community property, then it is his burden to prove so.  And if he thinks that he can carry his burden by offering a contract supposedly made in Mexico, then he is free to try.  But the issue remains one of Texas law.

Furthermore, even if it may happen that Mexican law comes into play, "the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens*." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163–64 (5th Cir.), *reh'g denied,* 824 F.2d 972 (5th Cir.), *cert. denied*, 484 U.S. 977 (1987).  *Accord Manu Int'l, S.A. v. Avon Prods, Inc.*, 641 F.2d 62, 68 (2d Cir.1981) ("[w]e must guard against an excessive reluctance to undertake the task of deciding foreign law").

In sum, *no* factor militates in favor of Shelby's position;  and *every* factor militates strongly against it, with one exception, and the exception is a factor that points in neither direction.  Shelby failed miserably to carry his burden to prove "all elements of the forum non conveniens analysis" and to "establish that the balance of factors strongly weighs in favor of dismissal."  *SES*, 2013 WL 2456797, at *3.

---

[171] R. 00853, 856-57.

## CONCLUSION AND PRAYER

The Petition is long on rhetoric but short on evidence. Shelby failed to prove facts that left the Trial Court no discretion to deny his motion to dismiss the Executor's counterclaims. Shelby has failed to show that the decision of the Trial Court was arbitrary, unreasonable, or without reference to any guiding rules or legal principles. Accordingly, the Executor respectfully requests that the Petition be denied.

DATED:   November 24, 2015.

Respectfully submitted,

*/s/ James Austin Fisher*

James Austin Fisher
   State Bar of Texas Number 07051650
   email:  jfisher@fisherwelch.com
Shannon L.K. Welch
   State Bar of Texas Number 90001699
   email:  swelch@fisherwelch.com
**FISHER & WELCH**
**A Professional Corporation**
Ross Tower, Suite 2800
500 North Akard Street
Dallas, Texas 75201
Telephone:  214.661.9400
Facsimile:   214.661.9404

**ATTORNEYS FOR**
**REAL PARTY IN INTEREST**
**JAMES THOMAS DORSEY,**
**INDEPENDENT EXECUTOR OF**
**THE ESTATE OF DOROTHY**
**LOUISE LONGORIA, DECEASED**

## CERTIFICATE UNDER TEX. R. APP. P. 9.4(i)

I hereby certify that this document contains 14,875 words, according to computer program used to prepare it, excluding the caption, table of contents, index of authorities, statement of issues presented, signature, proof of service, certification, certificate of compliance, and index, as provided in TEX. R. APP. P. 9.4(i).

*/s/ James Austin Fisher*
James Austin Fisher

## CERTIFICATE UNDER TEX. R. APP. P. 52.3(j) and 52.4

I hereby certify that I have reviewed this response and concluded that every factual statement in this response is supported by competent evidence included in the appendix or record.

*/s/ James Austin Fisher*
James Austin Fisher

**CERTIFICATE OF SERVICE UNDER TEX. R. APP. P. 9.5(e)**

I hereby certify that on November 24, 2015, a true and correct copy of this document was served on Relator Shelby Longoria, through his attorneys of record named below, and on Respondent The Honorable Loyd Wright, in the manner indicated and in compliance with Rule 9.5 of the Texas Rules of Appellate Procedure.

**Attorneys for Relator Shelby Longoria**

Johnny W. Carter, Richard W. Hess, and Kristen Schlemmer
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
*BY EMAIL TO jcarter@susmangodfrey.com, rhess@susmangodfrey.com, and kschlemmer@susmangodfrey.com*

Robert S. MacIntyre Jr.
MacIntyre McCulloch Stanfield Young
2900 Weslayan, Suite 150
Houston, Texas 77027
*BY EMAIL TO macintyre@mmlawtexas.com*

**Respondent**

The Honorable Loyd Wright
Presiding Judge, Probate Court Number One of Harris County, Texas
201 Caroline Street, Sixth Floor
Houston, Texas 77027
*BY COURIER DELIVERY*

*/s/ James Austin Fisher*
James Austin Fisher